May it please the Court, this is an unusual case where the lower court's standing determination is at least equally consequential to CACI than the bid protested issue, and the reason for that is it's based on the notion that CACI had an organizational conflict of interest. We of course also challenged under the APA the Army's disqualification of the bid, but I want to focus on standing given its importance to the decision below, and in fact given that it was the sole basis of the actual dismissal here. That standing determination should be reversed. The court's standing determination was both procedurally and substantively flawed. Procedurally in that the COC, the Court of Claims... Counselor, suppose we agree with you on the standing issue, but not on the merits issue. What's the gain here of sending this back? What's the gain here of sending this back? Well, I mean, we think you should reach the merits. I mean, so I tend to agree with you, Your Honor, that there's not a lot of reason to send this back. If you disagree with us on the merits, you would affirm on the merits, but we think to get there, you need to make clear that the contracting officer's determination is invalid and that the district court's determination that we didn't meet standing is also improper. So we're not actually inviting you to send it back for proceedings that we already know what the Court of Claims is going to do on the merits. We'd ask that you reach the merits as well. But the Court of Federal Claims ruled against you on the merits, on the two technical deficiencies, right? That's right. It did. So you'd have to overcome both of those. Well, you mean to prevail in this court? Yes, we would. I would say to you, however, that part of prevailing for us is getting rid of that organizational conflict of interest ruling, because it may have implications beyond this proceeding, right? I mean, it's a determination that our prior work disqualifies from any work in this space, or at least could be read that way. So we have an interest in that. Are you actually opposed to a remand to deal with the OCI issue? Perhaps it would be a remand all the way back to the Army, because as you point out, the contracting officer didn't, in a timely fashion, deal with the conflict. So is that something you would want us to consider? That's always a possibility, but we don't think it's necessary here for the very reason that there's no reasonable court or contracting officer that could look at this situation and come up with a different conclusion. And the principal reason for that, and we have three different categories of evidence, but the principal reason for that is the sunset provisions in the agreements. Even if you assumed that there wasn't, the reason that's the easiest route is it assumes that there's a conflict of interest. It assumes there was a conflict of interest, at least theoretically. But even if you assume that there was a conflict of interest, the contracts clearly provide that those conflicts were sunsetted after four years and one year respectively in both of those agreements. What about FAR 9.505-1, which seems to say you shall not participate in this contract? Is there any authority that indicates that can be sunsetted? Well, yes. 9.507-1 specifically says you have to address that sort of... I'm sorry, 9.507-2 specifically addresses what are called the CEDA violations. Has the court of federal claims or this court interpreted the interaction between 9.507-2 and... Let me just stop for one second. I just want to understand what you would like to have. I recognize you think no reasonable person could reach the opinion that the contracting officer here did, mind you, after the fact. But if we think it's more complicated than that, and that a reasonable contracting officer could reach maybe two different views, what would you have us do at that point? Well, I mean, look, you've discussed the possibility of a remand. That would be better than ruling against us, that's for sure. But we think that this court can interpret these provisions as a matter of law. And when you read them as a whole, 5.05-1 speaks to these CEDA violations. Don't ask me why they're called CEDA violations, because it's Systems Engineering and Technical Direction, which doesn't spell CEDA, but you'd have to ask the contracting bar that question. But 5.05-1 speaks to CEDA violations. It uses the language shall, but it has to be read in light of the obligation of the contracting officer to determine a reasonable limit, a reasonable time limit. Address those, mitigate those, and determine a reasonable time limit under 5.07. And 5.07-2 specifically uses a CEDA example. Now it says that in the example, the contracting officer might determine that you have to ban participation for the life of the contract, but that's permissive, and that's not what the Army did here. The Army specifically addressed the conflicts that it anticipated from these prior contracts, the S3 contract in 2013, and the RG3, I always want to say R2D2. And I take it those are all factual findings. Those are all factual findings. Factual findings that were made by the contracting officer. Well, Your Honor, the contracting officer, this contracting officer, in this proceeding, didn't address this at all. And that's part of the problem with what the contracting officer did here. He did not address the prior contracts which were in the record, and his obligation under the FAR is to go look at the record and determine whether there was a problem. And this contracting officer didn't address that at all. And, you know, in the post hoc declaration, or certainly not at the beginning when he was supposed to. We have no decision in this case with respect to the OCI from the contracting officer? The contracting officer did do a post hoc analysis. That's what I'm talking about. Yes, no, that's right. I'm sorry, I misunderstood your question there. What I was saying was in the contracting officer's analysis,  in the contracting officer's analysis, the contracting officer didn't address these particular issues that we raised. He didn't address, there's no determination as to the sunset provisions. And the Court of Federal Claims didn't rely on the declaration anyway. And the Court of Federal Claims didn't rely on the declaration, but part of our argument there is the Court of Federal Claims should have been doing an APA type analysis, and the APA type analysis would have required rejection of the declaration anyway. But in the de novo review that the Court of Claims did, the Court of Federal Claims didn't look at these issues either. What the Court of Federal Claims kept saying repeatedly, over and over again, was there's no evidence. We had no evidence. Well, we had evidence. We had these prior contracts in the record. They clearly provided that this conflict of interest here was addressed, it was mediated, it was remediated, it was anticipated and remediated, and sunsetted. And by the time that we bid, there was no conflict of interest under those provisions. And CNSCI had every right to rely on those contracts. So before we run out of time, unless my colleagues have further questions on the standing issue, maybe you should talk about the technical deficiencies, and particularly the length of them. Well, so... Your argument is that the token wasn't operational hardware, and that you were treated differently... Our principal argument is that we were treated differently, Your Honor. But isn't the burden on you to show that you were treated differently? Yes, it is. And I think our... I mean, I think our showing was that... And I have to be careful here. Some of this is under seal. I'm going to speak in generalities here, Your Honor. But we had a device that did authentication. And that device... We were faulted for not including those in our measurements. And our point is, our competitors had devices that did similar functions that weren't included in their measurements at all. It's that simple. They had an authentication device... But you didn't show that their authentication devices would have resulted in not satisfying the length requirement. Well, but that... That's not... That wasn't shown with us either. That's the point. The point is that the court... Sorry, the contracting officer... Indulged an inference in their favor that it didn't indulge in our favor. So, I mean, there's no finding... The contracting officer said that they couldn't tell. There just wasn't enough in your description of the extra device and what it might do to length and weight, etc. The contracting officer looking at your competitors' proposals didn't have the same concern. It doesn't seem like disparate treatment. Again, that's simply because they indulged an inference in their case. They looked at it and said that's close enough that they didn't say with us. Why isn't there a finding that we can tell that they still meet the swap measurements and we can't tell with you if you do? Well, I'm not sure that... Actually, what the particular contractor says in the record here is there's an absence of evidence as to whether we meet the swap record. And there was no similar absence for your competitors. No, no, no, that's... No, I'm sorry. What the competitor is saying is there is an absence of evidence as to them. And they're saying, therefore... But the contracting officer indulged in inference that there wouldn't have been a problem. But the theory, the government's theory, as I understand it, is that you had a burden to show that you complied with the length requirement and you didn't do it. And you also had a burden to show that the other parties were treated differently and you didn't meet that burden. So in each case, it's saying there's a burden on you which you didn't meet. What's wrong with that? Well, I mean, we would simply submit that we did, Your Honor. And I mean, that's our argument. So we... Our device... There's no record evidence that our device doesn't meet the swap... Well, but the point is, it's the absolute same as the other competitor who had the same situation and had an inference indulged in their favor. And maybe not an argument that the court's willing to entertain, but that's our position on that. We have... There's one other issue. And that's whether we could meet certain requirements to process data while we're doing authentication. And the answer to that is the record plainly reflects that there is a second port that allowed that sort of data processing to take place. Do we have to just determine whether it's reasonable to read the record contrary to what you said? Meaning if it's reasonable to read it that there isn't a second port, do we have to affirm if we reach the merits? Well, I mean, our view is, I guess under any standard, we would say we prevail. We would meet that. It's unreasonable and unsupported. That's correct. And the reason for that is the technical appendix plainly says there is a second port. It says there is a second USB port that is available for use. Now, what the government said when it looked at that was, well, that looks like it's some future plans. But that's not what it said. It said there is a second port. Wasn't it your burden as a bidder to make absolutely clear what it was that you were proposing to build for the Army? Yeah, absolutely. If there's doubts, they should be resolved against you, correct? Yes, if there are doubts. But I don't know how you can read a sentence that says there is a second port to mean something else. And with that, Your Honor, I'll reserve. Okay, we'll give you two minutes to roll. Mr. Faulkner? May it please the Court? The Court can affirm the cloud court's decision for any one of four reasons. I don't understand the standing issue here. Is the technical deficiency, is that a standing issue, too? Your Honor, that could be another basis that argument wasn't raised or addressed. Yes, I understand that. But I'm asking a hypothetical. That could be a standing issue also. They don't have standing because it was technically deficient. Yes, Your Honor, especially after this Court's decision. So anything on the merits that would result in a rejection of their bid would be a standing issue. There's no merits left. Everything is standing. Well, so that's not an argument we made in this case, Your Honor, but I think under ACSA's protection... No, but there's the logical consequence of the argument that you're making, right? Every merits issue becomes a standing issue. Your Honor, in this case, the issue of OCI was not a standing issue at all. Answer the question. Under that theory, every merits issue becomes a standing issue. No, Your Honor, I don't think that's the case. Why is that not the case? Because I think there's situations like this when you have an issue that comes up that wasn't addressed in the merits. And this came up, I think, in Myers and Klinicomp and both those decisions. Those aren't necessarily merits decisions. Those are standing decisions based on whether they're an interest or party or not. Okay, what's an example of a case where the bid is deficient where that wouldn't be a standing issue, under your theory? So I think partially it depends when it arises, but I think Myers and Klinicomp are both good examples where you have the sole sole... You mean if it arises before the contracting officer, it's a merits issue, but if you raise it later on, then it becomes a standing issue? So in Myers, for example, you have a sole source procurement, and you have a party wanting to challenge that sole source procurement. Is that the difference? And the issue in that case was... In my hypothetical, is the difference between whether the merits issue was raised before the contracting officer, which had been it's a merits issue, and whether it's raised later by the government, and then it becomes a standing issue? Is that the difference? Well, I think standing, of course, so I was going to come up in these litigations. Do you understand what my concern is? I mean, the cases in Myers and all these other cases, those are quite different because they involve a situation where somebody is challenging another bidder's qualifications or whatever, whereas here, the standing issue is the same as the merits of whether this bid should be accepted. I'm having trouble seeing how that's a standing issue because it results in conflating the merits with standing in every case. Yes, Your Honor, so I think in this case, the issue of the OCI was actually... It wasn't related to the merits because the merits was on the technical deficiencies, the three deficiencies. Well, it wasn't related to the merits of what was decided, but it is related to the merits of whether CACI had a qualifying bid. It was related to whether CACI was an interested party at the Court of Federal Claims, and that's what the court found. It said you're not an interested party because even if you prove that there was error in these three deficiencies, you still would not be eligible for award. So it seems to me that you're standing or in a critical situation where the contraband officer doesn't decide a merits issue, and you're saying, oh, well, not to worry. You can come in later and treat that as a standing issue and have the Court of Federal Claims resolve it. Well, I think it's just as any other standing analysis would be, in front of the Court of Federal Claims, once standing is challenged. So in this case, it wasn't even the government who brought up the standing issue. It was the intervener, SNC. So what happened was CACI filed their motion for judgment on the administrative record. Intervener, SNC, filed their motion to dismiss, and then the government joined that motion to dismiss when it filed its cross-MJAR. And at that point, it was already at issue, and then the motion was based entirely on the pleadings in the administrative record at that point. So this is all happening without... This would have been put at issue regardless of the government's argument if the government hadn't joined or if the government had tried to submit any evidence in support of its standing. Yeah, but it's an issue that under our cases should have been brought up before the contracting officer and litigated there. Maybe it's not too late to send it back to have that happen, but I don't understand how you can say that the merits issue about a qualifying bid is something that can be ignored by the contracting officer and brought up as a standing issue by the government once the case gets to court. That just doesn't seem right. So I don't think in this case that it was ignored so much as their proposal was technically unacceptable, and I think it's quite common for the government in these situations to be making this OCI analysis or responsibility determinations once you have a potential awardee. Suppose the contracting officer     the technical deficiency. Are you saying the government could come to court and say, you know, we're going to do this and we're going to do this and we're going to do this and then come in later in the court of federal claims and say, oh, you don't need to reach the OCI issue because there's a lack of standing because of the technical deficiency? I think that would depend on the circumstances, Your Honor. There might be other standing arguments in there. Could you do that? There might be other standing arguments depending on the facts. Could you do that? Could you, under those circumstances, come in and say, well, we don't have to reach the OCI issue because there's a technical deficiency here that wasn't addressed by the contracting officer and that's a standing issue. So court of federal claims, we want you to decide there's a lack of standing here because there was a lack of technical qualifications. Can you do that? I think, Your Honor, it's difficult to say in this hypothetical without more facts. I just think that situation wouldn't arise necessarily because... Well, the fact's here. The fact's in this case. The contracting officer didn't decide the technical qualifications but he did decide the OCI. He said, OCI, you say, we don't need to reach that because there's a lack of standing because of a technical deficiency. Yes, so they just never arrived, they didn't get to that point in the process. That's correct, Your Honor. So that becomes a standing issue then. In this case, yes, it was framed as a standing issue. No, in my hypothetical, the technical lack of technical qualifications becomes a standing issue. I think under asset protection that this court has decided that can be a standing issue. It seems to be a problem    when the regulations say that the contracting officer can provide a waiver and it seems to contemplate also that the OCI can provide a waiver and it seems to contemplate also that the OCI can provide a waiver and it seems to contemplate also that under the regulations that the sunset provision would apply. So I think that goes to the preponderance of evidence and the weighing of the evidence. I think in the case of the sunset clauses, those clauses did not actually get to what services were provided, which I think is the biggest issue with those sunset clauses. Of course, as we say in our brief, those clauses can also be waived by the government and certainly there's nothing in those clauses that divests the contracting officer in the future of having to analyze an OCI on its own terms.  the final point on those... Did the order of no claims consider the sunset provisions? They were in the record. I don't think it's referenced in the opinion, Your Honor. The one finding of fact they did make is that CAC didn't submit any evidence to show that they didn't provide these services. And what, if anything, is your position on whether we should remand all the way, perhaps, to the contracting officer to do a proper evaluation as to whether or not CACI is burdened by an OCI? So in this case, that shouldn't be necessary since their proposal is already technically unacceptable. So there's no reason to get to that OCI analysis. Is there no remedy? Let's just assume for the sake of argument that the OCI finding   they're burdened by it and it may impact them in a future bid. Is there no remedy for that? Well, I don't think there's a remedy for that. I think  I don't think there's any harm in this case to CACI from a finding on the preponderance of the evidence and a dispute over standing. There has been no formal agency action. The Army never said, okay, you're eligible for award, but we're going to take that away because we do think you have an OCI. Is it not something they might confront in the next bid? That is, here is a judicial finding of an OCI? If they compete in future bids, in future awards related to this program, then presumably the CO at that point will have to address whether there is an OCI or not. But we also  the issue because it's framed as a standing issue. Yes, Your Honor. It stands as jurisdictional. Yes, Your Honor. Absolutely. So how do you get around, in terms of the sunset provision, how do you get around 9.507.2, which contemplates there could be situations in which there will be an end date to systems in engineering and technical direction work on the original contract? I think in this case, 9.505-1 is clear that if you provide these services, you shall not provide for the follow-on system. The court of federal claims didn't address that and we haven't, correct? That's right. So I'm not aware of that. I don't think this court has ever addressed a seated case like this as far as I'm aware, Your Honor. I think attorney construction is an OCI case, but in terms of CEDA itself, I'm not aware of that. But I do think in the terms of what the court of federal claims did in this case, I think it is consistent with Meyers and Clinicop in this court, where those sorts of decisions were made when there wasn't an agency decision. There wasn't an agency decision made on responsibility. Can you cite a single case in which an issue about the merits of the contractor's bid has been treated as a standing issue? That's not Meyers. That's not these other cases. There the standing issue existed because the contractor was saying that another party's bid wasn't compliant. Well, there the issue was whether they were responsible bidders. So that would get to the merits eventually. They just didn't get that far. Yes, but in a situation where what's before the court is not the merits of the challenging party's bid, do you understand the difference? Yes, yes, Your Honor. Can you cite a case in which where the issue goes to the merits of the contractor's bid, the government can come in and raise a different merits argument than the one that the contracting officer writes and treat that as a standing issue? So I don't think so at the federal circuit. I think that sort of analysis is done at the Court of Federal Claims and we cite a string of cases for those where the courts say there hasn't been... If the government overlooks an issue that's disqualifying, we can look at that in the context of standing. So I do think those cases are happening at the Court of Federal Claims and we cite those in our briefs, including Otto Consultant and others. So that does happen below, but at the federal circuit I'm not aware of any, Your Honor. Anything further? Okay, then I'll take my time as well. Okay, thank you. Mr. Hellman? Good morning, Your Honor. It's Matthew Hellman on behalf of the Appellee General Dynamics Mission Systems. I want to say a few words about standing and the disposition of this case, but also the merits as we're talking about them in terms of the deficiencies. A couple of points. Just so the Court is clear on what was actually presented and argued below, there was no argument by my friends on the other side below that the consideration of the other intervener's motion raising the conflict issue was improper or otherwise not appropriate as a standing issue in front of that court. So that's one issue of forfeiture. But because it is a standing issue, because it is jurisdictional, we have the obligation to look at it regardless of the arguments that are made. Well, it's a statutory standing issue, Your Honor. This is not, so that's another clarifying point that I hope is helpful to the Court. This is not an Article 3 issue. It doesn't go to justiciability or this Court's power under the Constitution to hear the case. It is a statutory argument. And under Steele Co., which is the progenitor of the whole what do you consider first, footnote 2 of that decision makes very clear that statutory standing, in part because it often does look like a merits argument for the reasons that you're talking about, Your Honor, isn't necessarily something that has to be considered ahead of other merits kinds of arguments. Well, I'd say two other things about standing in my time here. The primary submission from my friend is about the sunset provisions and Section 9.507-2. Neither the sunset provision nor that particular provision of law were invoked by my friends on the other side below as legal bases for coming out the other way on the OCI issue. Those arguments are being made for the first time in this Court. It's true that the contract was in the record. As we all know, putting a contract in the record is not the same thing as saying that we win because of this provision in the contract. That is an argument based on the contract, not the same thing as simply putting it into the record. I think all of that should lead this Court to affirm with respect to the OCI. But even if the Court has questions about that, it can and indeed must proceed to the other grounds that were found as an independent basis based on factual findings for finding the other side's proposal deficient. Let's talk about both of them. And again, we get into confidential material here, so I need to be clear. Okay, but you're also out of time. Well, we encourage the Court to stand on our briefs on that point. And I'll just add that with respect to the swap question, differential treatment requires proposals to be substantively indistinguishable as the legal standard. The Army made a decision that these were not substantively indistinguishable, but were in fact different. Okay, I think we're on. Thank you, Your Honor. Thank you. Okay, Mr. Coffin. Your Honor, one important correction, one important answer. The argument that we didn't raise this 9507 argument below is simply incorrect. Document 55, page 13, our response and reply brief to the MJAR, we say, the Army who negotiated the S3 task order determined that whatever future conflict the applicable work might create, such conflict would no longer be relevant to future work requirements at a date well in advance of the agency's issuance of the November 2020 solicitation here. And then we actually cite an article that specifically quotes 9507-2. We just, we didn't cite 9507-2, but we cited its substance right there, the very text of it. We didn't have a pin cite to 9507. But the point is not waived at all. Myers and Clinicon, you heard, are sole source contracts. That means the government, the contracting officer, never had a reason to make the particular determination that was at issue in those cases. So the court made that determination in the first instance. That's not the case here where the agency has made a determination. It was just a faulty one. You think that with that... Mr. Hellman mentioned Steelco and says this is a statutory standing question before us and we can just essentially ignore it and move on to the merits. What's your view on that? Well, first of all, the statutory, this is, it's statutory, but it's part and parcel of what Article 3, I mean, Article 3 applied to this particular context. What the courts have said is that this is more stringent than Article 3 because it requires certain things. But it is a threshold determination that has to be made by this court. Well, you'd have to have an interest to have Article 3 standing. Correct. And it's economic, that's what this is all about, the economic interest. That's what this falls under. Judge Dyke, your question, if you assume that the contracting officer had done everything right and had made this determination at the beginning, never reached the deficiencies, but made this determination at the beginning, we of course would have standing to challenge that because the issue in standing is if we win our merits portion of the appeal, would we get relief? And that standard would be satisfied here. So, you know, I think your instinct is correct that they're trying, you know, they have essentially tried to backdoor the merits into the standing here, and that's improper. Okay, I think we're out of time. Thank you. Thank you very much. That concludes our session for this morning.